Green, J.
delivered the opinion of the court.
Mary W. Jordan was the daughter of the complainant, and in the spring of 1842, she intermarried with the defendant. She died in Tennessee the 27th of December, 1842,— *117 Previously to her marriage, and about two years before her death she removed from Tennessee to Arkansas, taldng her negroes with her, where she hired them to her brothers. She was mari'ied to the defendant in Arkansas, and shortly after the marriage, the parties came to Tennessee, where the defendant commenced building on his wife’s land, with a view to a future residence; and previously to her death had despatched an agent to Arkansas for her negroes, but they had not been removed at the time of her death.
The defendant’s domicil was in Tennessee at the time of his marriage and at the death of his wife. By an act of the Arkansas legislature, passed the 28th of December, 1840, it is enacted, “That slaves are hereby declared to be, and hereafter shall descend, and be holden as real estate, saving to husbands, creditors, and all others, the rights vested in them by the laws now in force.”
The question is, whether the mother of Mrs. Marable shall inherit the slaves that were in Arkansas at the time of her death, as by the law of that State she would inherit lands? — or did the defendant, by the marriage, acquire a right to the slaves, as by the laws of Tennessee the personal estate vests absolutely in the husband.
1. The first inquiry is, what construction shall we place upon the saving of the statute? The enactment is, “Slaves are hereby declared to be, and hereafter shall descend and be holden as real estate, saving to husbands, creditors and all others, the rights vested in them by the laws now in force.” It is argued by the defendant’s counsel, that we are to understand this saving as an exemption of husbands, creditors, and all others from the operation of the preceding clause; and that the laws then in force were to continue to regulate and control the disposition of slaves, so far as husbands, creditors, and all others were concerned. We cannot concur in this construction of the law. It would have some plausibility if it were not for the words, “all others,” in connection with “husbands and creditors.”
But if the law is to continue as it was before as to “husbands, creditors and all others,” we are unable to perceive in what particular it was changed. Besides, the saving ap *118 plies to rights vested in “husbands, creditors, and all others.” These words apply to rights then in existence, and with which the new principles Applicable to this species of property, was to have nothing to do.
2. As to the question whether these slaves shall go according to the law of the State where they were situated at the time of Mrs. Marable’s death, or according to the law, of her domicil, the cases of McCollum vs. Smith, Meigs’ R. 342; and Kneeland vs. Ensley, Meigs’ R. 626, are conclusive.
In the case of McCollum vs. Smith, the contest was in relation to the proceeds of an estate in Louisiana, to which Mrs. Tamsey Smith was entitled. The husband claimed the estate as administrator of his wife, and his children claimed the succession according to the laws of Louisiana. The wife’s domicil was in Tennessee and she died here. That case differs from the one before us in no material particular.
But if the question were now for the first time before this court there could be no difficulty in its determination. Land and all immovable property, whether immovable in its nature or made so by the laws of the State where it is situated is controlled as to succession by the lex rei sitae. Story’s Confl. L. 447. And although it is a rule of international law that the succession to personal property is controlled by the law of the domicil, yet it is in the power of any State to change the law in this respect; for unquestionably every State has a right to regulate persons and things within its own territory according to its own sovereign will and pleasure. Story’s Confl. L. 23. Nor is it bound to give effect to any general principle recognized among nations upon this subject.
The legislature of Arkansas exercising this sovereign right, has declared that “slaves shall descend and be holden as real estate.” This enactment is opposed to the general rule of succession as to things moveable in their nature, and declares that the succession to this particular description of moveable property shall be governed by the laws which regulate the holding and descent of real estate.
We cannot concur in the sentiment of the Court of Appeals of Kentucky, “that if the legislature had declared slaves should be considered real estate without qualification, such *119 an act should not be construed to be an abrogation of the international law, as to the disposition of moveables.” 5 J. J. Marsh. R. 482. On the contrary, we hold that every nation “may impress upon moveable property any character it may choose, and no other nation can impugn, or vary that character.” Story’s Confl. L. 447.
We think, therefore, the complainant is entitled to the ne-groes in controversy, by inheritance, according to the laws of Arkansas.